IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>WALTER ADONAI RIVERA CHINCHILLA,<br><br>        Defendant. | DOCKET NO. 3:24-CR-238-FDW-SCR |

**MOTION TO REVOKE DETENTION ORDER AND FOR RELEASE ON CONDITIONS**

Mr. Walter Adonai Rivera Chinchilla through counsel, Federal Public Defenders Elizabeth Gerber and Nicole Lybrand, moves this Court pursuant to 18 U.S.C. § 3145(b) to revoke the order of detention entered on November 8, 2024, and order him released on conditions.

## BACKGROUND

On October 29, 2024, Special Agent Caitlin McGourty sought a criminal complaint against Mr. Chinchilla for violations of 18 U.S.C. § 922(a)(1)(A) for conduct occurring between July 3, 2024, through October 16, 2024. Dkt. #3. Based off that complaint, Magistrate Judge Metcalf signed an arrest warrant against Mr. Chinchilla on October 29, 2024, which was executed that same day. Dkts. #4-5. Mr. Chinchilla made his initial appearance before Magistrate Judge Keesler on October 31, 2024, at which the Government moved for detention. The preliminary and detention hearings were scheduled for November 5, 2024.

1

The Probation Office prepared a pretrial report on November 4, 2024. Dkt. #8. The Probation Office recommended that Mr. Chinchilla "be released on a $25,000 Unsecured Bond with pretrial services supervision under the standard conditions" and several specific conditions, including location monitoring. *Id.* On November 5, Mr. Chinchilla waived his preliminary hearing, Dkt. #9, and a contested bond hearing occurred at which Agent McGourty testified under oath. Magistrate Judge Keesler took the matter under advisement but issued a written order on November 8, 2024, ordering that Mr. Chinchilla be detained. Dkt. # 10. Magistrate Judge Keelser concluded that the Government had introduced clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community or Mr. Chinchilla's appearance as required. *Id.* He found three factors in support: the weight of the evidence against the Defendant is strong, he has significant family or other ties outside the United States, and he has prior failures to appear. *Id.* In additional text, Judge Keesler expounded that it was "a close bond decision." *Id.*

On November 19, 2024, the Grand Jury returned a Four-Count Indictment against Mr. Chinchilla for violations of 18 U.S.C. §§ 933(a)(1) (Count One), 922(a)(6) (Counts Two and Three), and 922(a)(1)(A) (Count Four). Dkt# 13. Mr. Chinchilla is scheduled for Initial Appearance upon the indictment on November 26, 2024.

The facts relied upon at the detention hearing are stated in the Complaint, Dkt #3, and as testified by Agent McGourty on November 5, 2024. Mr. Chinchilla was arrested on October 29, 2024, without incident, agreed to speak with law enforcement without a lawyer, and directed officers to a location where they recovered five firearms.

As stated on the Pretrial Report, Mr. Chinchilla has no prior criminal convictions and no prior arrests for any violent charges. He is a citizen of this country—born here in Charlotte—and has a stable residence available with his sister in Rock Hill, SC, who was present in the courtroom. No evidence was presented that Mr. Chinchilla had ever been located outside of North and South Carolina, that Mr. Chinchilla has a passport, or that he has other means of travelling internationally.

**ARGUMENT**

Mr. Chinchilla now moves under 18 U.S.C. § 3145(b) to revoke the Magistrate Judge's order.  Pursuant to 18 U.S.C. § 3145(b), if a person is ordered detained by a Magistrate Court, "the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "The motion shall be determined promptly." 18 U.S.C. § 3145(b). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 Fed. Appx 46, 48 (4th Cir. Sept. 6, 2001) (unpublished) (citing *United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992)).

Because Congress, in passing the Bail Reform Act, intended that "[p]retrial detention [would] be the exception rather than the rule," the provisions of "[t]he statute favor[ ] release over detention for the majority of accused persons." *See United States v. Holloway*, 781 F.2d 124, 125 (8th Cir. 1986) (citing S. Rep. No. 225, 98th Cong., 1st Sess., reprinted in 1984 U.S. Code Cong. & Ad. News 3182). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in favor of release." *United States v.*

3

*Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) (citing *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)).

"Because the law thus generally favors bail release," the statute places on the Government "a dual burden in seeking pre-trial detention." *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). First, the Government must establish one of the statutory bases for seeking a detention hearing under § 3142(f). If a defendant is accused of one of the offenses listed in § 3142(f)(1), the Government is automatically entitled to a hearing based on the nature of the offense. Second, after it establishes a basis for seeking detention, the Government must then show that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

<u>There is not clear and convincing evidence that Mr. Chinchilla will not appear as required.</u> When deciding whether a defendant will appear in court as required, courts should focus on the need to appear for the charges before them. *See United States v. Torres-Rosario*, 600 F. Supp. 2d 327, 334 (D.P.R. 2009). While Mr. Chinchilla has failed to appear for traffic citations over the last several years, there was no evidence presented that that history is predictive of his behavior in the instant case. Indeed, the empirically grounded Federal Pretrial Risk Assessment Scoring Guide directs that officers shall "not include FTAs for traffic summons." Exhibit 1 at #1.2.[1]

---

[1] The attached exhibit was last revised in 2013. The PTRA was revalidated in 2018 and was found to "perform[] well in predicting violations in general, including any adverse pretrial events and a combined new criminal rearrest or FTA outcome. Moreover, the current study demonstrate[d] that the PTRA can adequately predict specific types of pretrial violations, including rearrests for any or violent offenses, FTAs, or pretrial revocations." Thomas H. Cohen, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary*, Federal Probation Journal (September 2018), *available at* https://www.uscourts.gov/federal-probation-journal/2018/09/revalidating-federal-pretrial-risk-assessment-instrument-ptra.

4

Moreover, the Office of Probation has considered Mr. Chinchilla's history in traffic court in making its recommendation for release on conditions. The Office of Probation concluded that in the posture of *this* case and with the conditions available to *this* court, there are conditions of release that could "reasonably assure the appearance of Mr. Chinchilla." 18 U.S.C. § 3142(c)(1). Unlike for his traffic citations, Mr. Chinchilla now has counsel and the full resources of the Office of the Federal Public Defender, which includes, if necessary, transportation to and from any court appearances and/or meetings with counsel. And, unlike in traffic court, Mr. Chinchilla could be placed on pretrial supervision and electronic monitoring to ensure that he remains in regular contact with the court system and living and working in the places he represented to the Court at his detention hearing.

The Magistrate Judge's reliance on the Government's contention that Mr. Chinchilla has contacts who can ship firearms internationally and the fact that Mr. Chinchilla's father (who he only recently met as documented in the Pretrial Report) is a native of Honduras also fail to show that no conditions could reasonably assure Mr. Chinchilla's appearance. As to the first, the Government produced no evidence to show that Mr. Chinchilla has the resources, knowledge, or ability to relocate his person outside of the country. As to the second, ties to other countries, whether alleged as part of an individual's case or history, are insufficient to warrant detention where the individual has stronger ties to the local community. Consider the United States Supreme Court case *Truong Dinh Hung v. United States*, 439 U.S. 1326 (1978). There, following a conviction for espionage-related offenses, the District Court revoked the defendant's bond. *Id.* at 1326. The Fourth Circuit upheld that determination because the defendant was a citizen of another country, was convicted of offenses involving the transmission of information to other countries,

and he had not established permanent residence in this country. *Id.* Justice Brennan as the circuit justice overturned this ruling, writing "if these considerations suggest opportunities for flight, they hardly establish any inclination on the part of applicant to flee. And other evidence supports the inference that he is not so inclined." *Id.* at 1329. Among the countervailing factors were ones that also apply to Mr. Chinchilla: that defendant had resided continuously in the United States for over a decade and maintained a close relationship with his sister, a naturalized citizen. *Id.* Mr. Chinchilla, a citizen and lifelong resident of our community, who can reside with his sister in the nearby town of Rock Hill, surely poses a stronger risk profile than the defendant in *Truong Dinh Hung*. He should be ordered released.

<u>There is not clear and convincing evidence that Mr. Chinchilla is a danger to the community or another person</u>. Without question, the charges against Mr. Chinchilla are serious. They are not, however, violent, and there is zero evidence in the record to show that Mr. Chinchilla has a history of or inclination toward violence. And the order of detention does not itself make any findings that would support detention based on a danger to the community beyond the weight of the evidence. However, the "weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) (quoting *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)). It is not Mr. Chinchilla's burden to show that the crime of which he is accused is not serious and does not pose dangers to the community. *See United States v. Dominguez*, 783 F.2d 702, 706 (1986) ("A defendant can hardly be expected, after all, to demonstrate that narcotics trafficking is not dangerous to the community. Nor can a defendant 'rebut' the government's showing of probable cause to believe he is guilty of the crimes charged. . . . [E]vidence probative of guilt is admitted at

6

a detention hearing only to support or challenge the weight of the government's case against the defendant. This is only one of the factors relevant to detention.") (citations omitted). And, as above, pretrial supervision and electronic monitoring are less restrictive conditions of release that are available and that can reasonably assure the safety of the community.

## CONCLUSION

Mr. Chinchilla respectfully requests that the District Court grant his motion for a revocation of his detention order and release him on conditions pending trial.

Respectfully submitted:

*/s/Elizabeth Gerber*
Elizabeth M. Gerber
N.C. Bar 43794
Federal Public Defender's Office
129 West Trade Street, Suite 300
Charlotte, NC 28202
Phone: (704) 374-0720
Fax: (704) 374-0722
Email: elizabeth_gerber@fd.org

DATE: November 22, 2024

## ARTIFICIAL INTELLIGENCE CERTIFICATION

I, Elizabeth Gerber, hereby certify that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or

7

a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/Elizabeth Gerber*
Elizabeth Gerber
Attorney for Mr. Chinchilla